Argued December 27, 1918, affirmed February 11, 1919.

# KLAMATH WATER USERS' ASSN. *v.* MARTIN.

### (178 Pac. 356.)

**Waters and Watercourses—Irrigation—Suit by Water Users' Association—Complaint.**

1. Demurrer to complaint of water users' association seeking to foreclose lien said to have been given in connection with subscription to its capital stock *held* properly sustained, where nothing was stated respecting powers or purposes of plaintiff company indicating it had authority to maintain suit.

**Waters and Watercourses — Irrigation — Complaint by Water Users' Association to Foreclose Lien—Demurrer.**

2. Complaint of water users' association seeking to foreclose lien said to have been given in connection with subscription to its capital stock, one allegation being that payment was to consist in applying to the United States government for water rights, and paying to the United States the rates demanded for such privileges, *held* demurrable as not showing that any privity existed between general government and plaintiff.

**Waters and Watercourses—Suit by Water Users' Association—Complaint—Demurrer.**

3. Complaint of water users' association, to foreclose lien said to have been given in connection with subscription to its capital stock, which did not allege subscriber was owner of land involved so as to be authorized to impress lien upon it, and did not aver successors in title, if he had any, took with notice of alleged encumbrance, though averring subscription was acknowledged to entitle it to record, *held* demurrable.

**Waters and Watercourses — Subscription to Stock of Water Users' Association—Right to Record.**

4. Subscription by land owner to capital stock of water users' association, making assessments lien on land, *held* not instrument entitled to record so as to import notice to purchasers of land, though its execution was acknowledged.

**Waters and Watercourses — Subscription to Stock of Water Users' Association—Record.**

5. Record of subscription to capital stock of water users' association in certain book of mortgages did not impart constructive notice of lien arising under subscription to anyone interested in the land, where the instrument was not entitled to record.

From Klamath: DELMON V. KUYKENDALL, Judge.

Department 1.

Apparently this is a suit to foreclose a lien said to have been given in connection with the subscription to

the capital stock of the plaintiff. The complaint opens with the statement that the plaintiff is now and at all the times mentioned was a corporation organized and existing under the laws of Oregon, with its principal place of business at Klamath Falls. No intimation is given in the pleading respecting the purposes or powers of the plaintiff. It is further stated in substance that on December 29, 1905, H. F. Murdoch and Christine Murdoch executed under their seals and acknowledged so as to entitle the same to record, a certain stock subscription which was delivered to the Klamath Water Users' Association and by it accepted January 6, 1906, subscribing for and agreeing to take 101 shares of the capital stock of the corporation, and that the instrument provided that the shares and all rights and interests represented thereby are inseparably appurtenant to certain described real estate. No statement is made about who was the owner of the land at that time. The subscription paper itself is made an exhibit attached to and constitutes a part of the complaint.

By the subscription it is said that the rights accruing under the stock are appurtenant to the land, unless such rights shall become forfeited "under the provisions of this contract or of by-laws of this association or by operation of law, or by voluntary abandonment thereof by deed, grant or other instrument, or by nonuser for the term prescribed by law." It is provided also that if irrigation of the land becomes impracticable, the rights conferred by the subscription may be transferred to other lands; that every transfer of title to land shall operate also to pass title to the shares and rights thereunder, and upon proper notification thereof the officers shall transfer the stock on the books of the concern. A transfer of the stock is declared to

be void if undertaken separate from a transfer of the land. The following provisions appear in the instrument:

"As a condition of continued ownership of said shares of stock and participation in any of the benefits thereof, the undersigned or his transferee, agrees to make prompt application for a water right to the proper authorities of the United States for the land represented by his shares, and duly proceed to the perfection thereof, in full compliance with the law applicable thereto, and the rules and regulations established in pursuance thereof, as soon as official announcement shall be made that water for such land is available from the works constructed, owned or controlled by the United States.

"Upon the failure of the undersigned or his successor to make prompt application for such water right for the said land or to comply promptly and in good faith with the law and the rules and regulations applicable thereto, he shall forfeit to the association the said shares of stock and all rights incident thereto or that could by any means be claimed thereunder; and the undersigned, his heirs and assigns, shall thereafter have no right whatsoever as a member or shareholder of this Association, as to such shares."

It is said also in substance that no payment for shares shall be required except in the following manner: The subscriber shall make application to the proper representative of the United States for a water right at a rate not to exceed one share for each acre, and when all the payments required for such right shall be made and proper evidence thereof is adduced the subscriber's stock shall be deemed to be fully paid up, but until so paid up the payments due thereon shall be a lien upon the said land and the shares of stock, to be enforced as upon a foreclosure of a mortgage. It is stipulated also that assessments as they are levied shall become a lien upon the lands of the subscriber

and his transferee against which they shall be levied, likewise to be foreclosed.

The complaint states that on November 18, 1908, the Secretary of the Interior gave notice that water would be furnished from the Klamath project during the irrigation season of 1909 for irrigable lands in the township in which the land here involved is situated and upon which this suit seeks to foreclose a lien, and it specified the charges for construction and maintenance of the irrigation system established by the United States. It is averred also in the complaint that on May 23, 1910, the board of directors of the plaintiff levied an assessment for eight cents per share against the owners of and subscribers therefor, declaring the same to be a lien upon those shares and upon the lands to which they were appurtenant, to raise revenue for the expenses of the association for the year ending May 1, 1911, and further ordered that an assessment be levied to meet the maintenance and construction charges prescribed in the notice of the Secretary of the Interior. The plaintiff's pleading goes on to state that Murdoch and his wife on April 19, 1906, conveyed the land to Dewey, and recites mesne conveyances until the title was quitclaimed to S. E. Martin, April 16, 1914. The defendant Patterson is described as holding a mortgage against the defendant Martin, the lien thereof being alleged as inferior to the plaintiff's lien for calls upon the stock.

Five other further and separate causes of suit for the succeeding years down to and including 1915 were set up. As a seventh cause of suit the history of the land and its conveyances is narrated, with certain statements concerning a contract made by the United States and the plaintiff about the duty of the latter to collect assessments from its stockholders, and finally

it is charged that the defendant Martin has repudiated the stock subscription and contract signed by Murdoch. Under this cause of suit the plaintiff seeks to compel Martin specifically to perform the subscription contract already mentioned.

A general demurrer to the complaint was sustained by the court and, the plaintiff refusing further to plead, a decree was entered dismissing this suit and the plaintiff appeals.                                    AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. John Irwin.*

For respondents there was a brief and an oral argument by *Mr. W. S. Wiley.*

BURNETT, J.—1, 2. There are several reasons for sustaining the demurrer. In the first place, there is nothing stated respecting the powers or purposes of the plaintiff company indicating in any way that it has authority to maintain this suit. Again, it is said that payment shall consist substantially of applying to the United States government for water rights and paying to the United States the rates which it demands for such privileges. The complaint does not show that any privity exists between the general government and the plaintiff as to the first six causes of suit, authorizing the plaintiff to enforce payment to the United States. The contract itself does not award a lien to any individual, but impersonally says that the assessments shall constitute a lien, without stating in whose favor the lien exists. As between the corporation and the subscriber, the contract itself provides the penalty for a breach thereof in stating that failure to make application for water rights shall forfeit to the associa-

tion the shares of stock and all rights incident thereto,
and that the subscriber, "his heirs and assigns shall
thereafter have no right whatsoever as a member or
shareholder of this association as to such shares."

It will be noted that this forfeiture is not optional at
the will of either party.  Both parties have stipulated
that this consequence shall follow inevitably upon the
failure to apply to the general government for water.
It is the exclusive penalty both parties have devised
for the designated breach of the subscriber's covenant.

3-5. It is not alleged that Murdoch was the owner of
the land so as to be authorized to impress a lien upon
it.   Neither is it averred that his successors in title, if
he had any, took with notice of the alleged encum-
brance.   It is true that the complaint avers that the
subscription was acknowledged so as to entitle the
same to record.  As to the first six causes of suit, it is
not stated that the instrument was in fact recorded.
Neither is it an instrument entitled to record so as to
impart notice.   The mere fact that the execution of a
document is acknowledged does not entitle it to record
unless there is a statute providing for the same.   It is
true that in the seventh cause of suit it is stated that
the instrument was recorded in a certain book of mort-
gages, but not being entitled to record this does not
impart constructive notice to anyone interested in the
land.   The situation in that respect is analogous to
that found in *Musgrove* v. *Bonser,* 5 Or. 313 (20 Am.
Rep. 737), where it is held that an instrument not en-
titled to record imparted no constructive knowledge to
a subsequent holder of the title to the land described in
the conveyance.   The present complaint does not state
that Martin had any actual knowledge of the contract
of subscription or its terms.   Other reasons might be
adduced to show the defective nature of the primary

pleading.   The foregoing, however, are deemed sufficient to justify the ruling of the Circuit Court.

Its decree is affirmed. '                    AFFIRMED.

BEAN, BENSON and HARRIS, JJ., concur.